327 So.2d 740

**Alonzo SMITH**

**v.**

**STATE.**

**I Div. 632.**

Court of Criminal Appeals of Alabama.

Feb. 17, 1976.

Taylor D. Wilkins, Jr., and T. M. Brantley, Bay Minette, for appellant.

William J. Baxley, Atty. Gen., and G. Daniel Evans, Asst. Atty. Gen., for the State.

CATES, Presiding Judge.

First degree murder: sentence, life imprisonment.

I

About 9:30 or 10:00 p. m., May 12, 1975, according to the State's evidence, Deconstant Williams, was by the door at Percy Dale's place on Young Street in Fairhope. Smith drove up, got out of his car, walked up to Williams and slapped him to the ground.

"Q. What happened then?

A. Deconstant got ready to grab Alonzo and he went for his back pocket and he turned to run and that is when he shot him the first time.

Q. What happened then?

A. Deconstant was still trying to run and Alonzo went behind him and shot the second time.

Q. Then what happened?

A. I told Deconstant not to go up on the hill; somebody might not find him; I knowed he was hurt and he fell down and skinned his nose; he fell on the brick and skinned his face.

Q. Did he ever get up?

A. No, sir.

Q. Did he say anything?

A. No sir; I tried to talk to him.

Q. He never did talk to you?

A. He couldn't say nothing.

Q. At the time Alonzo Smith came up and went up to Deconstant Williams were any words exchanged between them at that time?

A. I didn't hear any words; I could not say.

Q. Did you ever see any kind of weapon or anything at all in the hands of Deconstant Williams?

A. No, sir.

Q. Where did Alonzo Smith have the gun, or where did he get the gun from?

A. He got it from his back pocket.

Q. Which back pocket, do you know?

A. Right.

Q. He reached in his pocket and got the gun?—Is that right?

A. Yes, sir.

Q. At what point did Deconstant turn and run?

A. He turned to his right and he was fixing to grab Alonzo.

Q. Fixing to grab him?

A. Yes, sir.

Q. Alonzo got the gun?

A. When he turned he got ready to try to run.

Q. How far was Deconstant from him when the first shot was fired?

A. About as far as from me to you.

Q. Alonzo followed him?

A. He was running behind him.

Q. How far was he from him when the second shot was fired?

A. About the same distance, because he was running right behind him."

-Testimony of State witness, Bobby Lee Stanley, on direct.

Other witnesses testified also to seeing this. Admittedly, there were discrepancies. After an overall consideration, we cannot say as a matter of law that the verdict of the jury was wrong.

## II

■ At the conclusion of the oral charge defense counsel took two exceptions to it. The first exception claimed that the

court had equated reasonable doubt with "substantial doubt".

Pretermitting whether the ground for the exception recited was sufficient in detail or substance as embracing the language used by the court, we have examined the oral charge as to reasonable doubt. From this examination,—though we will neither adopt nor disapprove some of the expressions as to hung juries—we consider no substantial right of the appellant was infringed.[1] See also *Hall v. State*, 54 Ala.App. 198, 306 So.2d 290.

## III

Appellant in brief argues that the court below erred in refusing his written requested charge, No. 10, which reads:

"The jury are instructed that the Defendant cannot be convicted, unless the evidence is inconsistent with any reasonable theory of innocence."

■ This charge fails to use the introductory predicate of "from (or after) a consideration of all the evidence." Ordinarily a trial judge will not be put in error for refusing a charge which omits this fundamental direction. Though, as with nearly all rules, this one has its exceptions, e. g., lesser included offenses.

Consistency, with innocence, is ordinarily abstract where there is direct testimony of the criminal act seen by a witness (Wigmore's Autoptic Proference as contrasted with circumstantial evidence).

■ Appellant correctly cites *Sanford v. State*, 143 Ala. 78, 39 So. 370, as approving this charge (there #16); see also, *Cagle v. State*, 211 Ala. 346, 100 So. 318. However, in *Sanford*, supra, the antecedent authority, *Bowen v. State*, 140 Ala. 65, 37 So. 233 (Charge #5), clearly related to a circumstantial evidence case. Here, Charge #10 was refused without error.

1. Hints as to a deadlocked jury may plant a seed of suggestion.

## IV

■ Exception was also taken to part of the oral charge wherein the trial judge referred to the jury's duty to attempt to reconcile testimony; we quote:

"* * * I remember a test that a Psychology teacher had; he had a man running through the class dressed in a weird outfit. Ordinarily everybody would notice the outfit, and a gun shot and scared us to death, and then he asked us to go out and write an account of what happened. There were 30 or 40 people in the class and you would not believe the discrepancies and difference in the account; some of them had the man clothed entirely different from the clothes he had on when he came through. You don't say a person has deliberately sworn falsely, because he may differ from somebody else in some of the details, but did he deliberately swear falsely as to a material fact in the case, and you are the sole judges of that. If you believe a witness swore falsely as to a material fact, you can disregard all of his testimony, or you can accept what you believe true and disregard that part you believe untrue and not worthy of belief.

"The law says the jury should attempt to reconcile the testimony of all of the witnesses and that is what I told you just now how testimony will vary, and if you are unable to reconcile testimony of one witness with another, you disregard his testimony. If something is so different from what you believe you don't have to consider that."

This was not subject to proper exception.

The judgment is

Affirmed.

All the Judges concur.